Rosa J. Evergreen, DC Bar No. 500227
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000
rosa.evergreen@arnoldporter.com
    --and --

Matthew J. Pavlides, DC Bar No. 424573
Eduardo S. Garcia, DC Bar No. 1028040
Stein Sperling Bennett De Jong Driscoll PC.
1101 Wotton Parkway, Suite 700
Rockville, MD 20852
(301) 340-2020
MPavlides@steinsperling.com

*Counsel for Christofilos Tsintolas, Deborah Tsintolas, and Fotini Tsintolas Economides Revocable Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>OLYMPIA INVESTMENTS, INC.<br>TSINTOLAS INVESTMENTS, INC.<br><br><br>                              Debtors. | Case No. 24-00158-ELG<br>Case No. 24-00159-ELG<br>(Chapter 11)<br>Pending Request for Joint Administration<br>Under 24-00158 |

**CHRISTOFILOS TSINTOLAS, DEBORAH TSINTOLAS, AND FOTINI
TSINTOLAS ECONOMIDES REVOCABLE TRUST'S REPLY IN SUPPORT OF
THEIR MOTION TO DIMISS THE BANKRUPTCY CASES,
<u>OR IN ALTERNATIVE, ABSTAIN</u>**

The Movants, through counsel, file this *Reply in Support of Their Motion to Dismiss the Bankruptcy Cases, or in Alternative, Abstain* (the "Motion to Dismiss"),[1] and state as follows:

---

[1] Defined terms not otherwise defined herein have the meaning ascribed to such term in the Motion to Dismiss filed by Movants [Docket No. 16].

I. **The Interested Parties and the Debtors Did Not Have Authority to File the Chapter 11 Cases.**

1. It is undisputed that the Tsintolas' parents gifted each child 25 shares and that their parents told each that they would be an officer and director of each Debtor.

2. It is undisputed that the total number of shares of each Debtor is 100 shares. (Debtors' Opposition, at Ex. I and J as indicated in the Articles of Incorporation).

3. It is undisputed that the Debtors elected in lieu of dissolution in the DC Superior Court cases to purchase Movants' 50 shares of each Debtor. DC §29-312.24 (b) (Debtors' Opposition, at pg. 5).

4. It is undisputed, that on May 22, 2023, Judge Williams, DC Superior Court, provided the judicially determined final value of the shares for each Debtor. (Movants' Motion to Dismiss, Ex. 4 – pg. 147 of filing).

5. It is undisputed, that on October 5, 2023, Judge Williams indicated in her Order, the Order started the 10 day clock as to whether or not the Debtors would purchase per her Order or give notice to dissolve each Debtor. DC §29-312.24(g) (Movants' Motion to Dismiss, Ex. 4 – pg. 147 of filing).

6. Under DC §29-312.24, there is nothing that indicates during the 10 day time period under DC §29-312.24(g) that Movants' 50 shares disappeared or became non-voting.

7. Under DC §29-312.24, there is nothing that indicates that the Movants' 50 shares were other than in some type of escrow or limbo status (having not yet been purchased).

8. Under DC §29-312.24, there is nothing that reduces the number of outstanding shares from 100 shares to any other number outstanding during the 10 day period.

2

9. Under DC §29-305.05, DC law requires that in order to have a special meeting of shareholder not less than 10 day notice or more than 60 days must be provided to all shareholders.

10. Under DC §29-305.05, DC law required that all 100 shares require notice of a special meeting.

11. It is undisputed that the Interested Parties provided no notice in compliance with DC §29-305.05 that there would be a special shareholder meeting. Rather, in lieu of notice and a meeting as required, the Interested Parties attempted to use a consent resolution under DC §29-305.04. (See Movants Motion to Dismiss, Ex. 4 and 5).

12. Under DC §29-305.04(a), a written consent resolution requires all shareholders representing the 100 shares to approve the resolution not merely shareholders representing 50 shares.

13. Whether or not the notice would have had to go to Movants or to the 50 shares themselves in their escrow or limbo status, the fact is that there was no notice to all shares in compliance with DC §29-305.05 and no consent from all shares consistent with DC §29-305.04.

14. Further DC §29-305.25 requires that in order to have a vote of shareholders there <u>must be a quorum of voting shares</u>.

15. DC §29-305.25 requires that a majority "of those shares that exist" are needed for a quorum. Because there are 100 shares outstanding, then 51 shares must be present for a quorum for a vote.

16. It is undisputed that 50 shares were not present for a vote on October 13, 2023.

17. Interested Parties wrongly stated in their resolution that they were operating by written consent of the shareholders and wrongly state in their resolution that they are holders of

3

all the outstanding shares. (See Movants Motion to Dismiss Ex. 4 and 5). Interested Parties do not own all of the outstanding shares – they only own 50 shares, thus the statement that all shares signed the consent is patently untrue as there were 100 shares outstanding for each Debtor.

18.     DC §29-305.28 requires a proper quorum and a plurality of votes to elect a director. Neither existed.

19.     The Interested Parties wrongly attempted using their 50 shares to vote out Chris Tsintolas and Fotini Tsintolas Economides. (See Movants Motion to Dismiss Ex. 4 and 5).

20.     In this case, there was no notice, no quorum, no meeting, and no proper director vote.

21.     Because of these basic failures to adhere to DC Corporate law, the Interested Parties were not able to remove Chris Tsintolas and Fotini Tsintolas Economides from the Board of Directors and create a three (3) person Board of Steve Tsintolas and his wife and sister Sandy, or pass any other resolution.

22.     Likewise any subsequent actions taken by Steve Tsintolas and his wife and sister Sandy as an improper board, including the filing of Chapter 11 and the retaining of counsel, is improper and ineffective.

23.     For purposes of analogy, this Honorable Court need look no further than a practical illustration as to why the Debtors contentions are absurd. It goes as follows:

> John and Jane own Corporation XYZ. John and Jane each own 50 of the 100 shares of XYZ. Jane decides that she wishes to dissolve XYZ because of John's conduct. Jane files a petition for dissolution and John elects to purchase Jane's shares. John and Jane can't agree on a purchase price for the shares and thus elect a judicial determination of the "fair value" of Jane's shares. The Court provides a value. During the 10 day period for John to decide to purchase or not purchase the shares, John contends that he is the sole owner of XYZ and crafts all kinds of resolutions increasing his salary, retroactively approving his bad conduct, hiring new lawyers, paying his companies whatever he chooses, voting his wife and sibling as board members, and then ultimately electing to file for bankruptcy.

4

Does anyone really believe that John can during the 10 day window do all of these things while John has not made the purchase to own or not own all 100 shares of the shares – such a contention that John can do so is absurd. John has no right to do anything as he is merely a 50 share owner out of 100 shares during the 10 day window and cannot act by consent resolution; or hold a special meeting without notice; or act without a quorum; or vote where he does not hold a majority of shares.

24. The Interested Parties filed the Unauthorized Bankruptcy Resolutions allegedly evidencing the Unauthorized Special Meeting on April 27, 2024, whereby the Interested Parties allegedly acted by unanimous written consent to pass the Unauthorized Bankruptcy Resolutions.[2] The Unauthorized Bankruptcy Resolutions carry no legal weight. The alleged Board who passed the Unauthorized Bankruptcy Resolution is not the lawful Board.

25. For these reasons, this Court should dismiss the instant Chapter 11 cases for lack of corporate authority to file.[3]

---

[2] *See* Movants' Motion to Dismiss, Ex. 9 and Ex. 10.

[3] It is well demonstrated in the Superior Court, and the Superior Court is well aware, that the Debtors took a number of conflicting positions regarding Movants' status as shareholders. First, in the Debtors' October 10, 2023 filing titled: "Opposed Emergency Motion for Addition to or Revision of October 5, 2023 Order," the Debtors alleged that the Final Order dated October 5, 2023 was not a "Final" Order. The Debtors' Motion was ultimately denied as moot on October 19, 2023. This is the same order the Debtors are now appealing and taking the position in the appeal it is a final order. In the Superior Court's April 9, 2024 Order, Judge Williams appeared to identify, without formally deciding, the concerning and illogical position that the Debtors could have taken the actions they allege they took to remove Movants from the Board on October 13, 2023 since they were contending in the Superior Court that nothing had happened during that time period which would in any way remove Movants' status as shareholders. Then, on November 20, 2023, the Debtors filed an Opposition titled "Defendants' Opposition to Plaintiff's Opposed Motion to Disqualify the Law Firm of Shulman Rodgers and its attorneys from Representing the Defendant Corporations" which insisted that even though the Defendants filed a "Notice of Intent to Dissolve" on October 16, 2023, "[Movants], petitioning shareholders, have 'no rights or status as a shareholder of the corporation.'" The Superior Court disagreed with Debtors, and in its February 7, 2024 Order granting "Movants' Motion to Disqualify the Law Firm of Shulman Rodgers and its Attorneys from representing the Defendant Corporations," and held that: "[t]he Court concludes that under D. C. Code § 29-312.24(g), a petitioner retains its status as a shareholder upon the corporation's filing a Dissolution Notice." Notwithstanding that conclusion reached by the Superior Court, the Debtors incorrectly state in their instant Opposition that "by interpretation of the statue, the Movants had no rights as shareholders when the Articles of Dissolution were filed on December 1, 2023." *See* Opposition, at pg. 9. That is contrary to the finding that Judge Williams has already made.

II. **Debtors' Smoke and Mirrors Arguments are Meaningless Where the Chapter 11 Filings Are Unauthorized and Are Nothing More Than Efforts to Relitigate 4 Years of Trial Before the DC Superior Court.**

    A. **Debtors' Preliminary Statement that the Chapter 11 Filings Serve All Shareholders Because the Filing Allows for Avoidance of TOPA and Certain Fees is Smoke and Mirrors: The Real Purpose Is to Primarily Benefit Steve Tsintolas**

While touting the benefits of Chapter 11 to all creditors and shareholders,[4] the Debtors omitted Steve Tsintolas' hidden objectives which are not in all creditors or shareholders' interest. These include but are not limited to the following:

- Judge Williams recognized that Steve Tsintolas inflated the Debtors debts by millions of dollars. Appendix A and B of her May 22, 2023 Order, which was attached to the Movants' Motion to Dismiss as Exhibit 4, took inflated debts that all related to Steve Tsintolas and/or his companies from millions of dollars down to approximately $300,000 in debt for each Debtor. Now Debtors have filed with this Honorable Court Schedules that go back to alleging that Steve Tsintolas is owed those very same funds which is simply an effort to relitigate his losing position of inflating debts to himself.

- Steve Tsintolas is attempting to impede the dissolution of the Debtors in the Superior Court. Since October of 2023, Steve Tsintolas has made no effort to winddown the affairs of the Debtors all the while continuing to pay himself inflated management fees and paying funds to his corporations and others judicially determined to be improper and excessive.

- Allowing Steve Tsintolas to control the dissolution is nothing more than continued oppression and self-dealing which is not in the interest of all shareholders.

- Steve Tsintolas wants to have control of the bankruptcy to avoid the DC Superior Court, including to avoid a DC Superior Court receiver who would look at and investigate self-dealing and payments[5] made during the past two years where Steve Tsintolas has not provided to Movants tax returns, financial statements, check ledger, and/or other financial information as to where the resources of the Debtors have gone. These are Debtors with approximately $20 million dollars of real estate with no mortgages or meaningful debt

---

[4] In fact, Debtors statements about the "benefits" of Chapter 11 bankruptcy seem to indicate an intention to use bankruptcy for purposes of avoiding a regulatory scheme and/or tax avoidance which is not a proper bankruptcy purpose. *See* Opposition, at pg. 2. While it may be proper to take advantage of certain exemptions in bankruptcy, filing bankruptcy in an effort to avoid taxes or regulatory schemes is not proper. Section 1129(d) provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes," and Courts have held that allowing a "solvent company try and lighten its tax burden" is not a proper purpose of bankruptcy. *In re South Beach Securities, Inc.*, 606 F.3d 366, 376 (6th Cir. 2010).

[5] This includes the debt to the law firm of Shulman Rodgers which the Superior Court deemed to be improper and which should be a debt that Steve Tsintolas is personally liable for not the Debtors.

6

(other than the debts Steve alleges he and his companies are owed that the Superior Court has already meaningfully discounted to a small amount) and for which there is no transparency as to where the profits have gone – note Debtors' own expert said that Debtors should be producing over $761,000 dollars in net profit if normalized management was in place. *See* Motion to Dismiss, at pg. 23.

- Steve Tsintolas is trying to undo Judge Williams award of expenses which represents approximately $1,500,000 due the Movants. It is not only legal fees, since this award of expense includes hundreds of thousands of dollars in expert and other costs.[6]

- Steve Tsintolas is also likely trying to control the sale of Debtors' real estate because under his management agreement he wants a 3% commission for any sale. Rewarding him in this manner would not be in the interest of all creditors or shareholders.

The Debtors have had many opportunities and in fact were required to share with Movants a plan for dissolution, but did not do so going back to December of 2023. Movants have suggested a retired judge as mediator prior to filing suit, during suit and have continued to leave that door open, however Steve Tsintolas while in control of Debtors has made no effort toward resolution. To suggest that Movants are interfering with an orderly and fair dissolution is disingenuous.

B.  <u>Debtors' Appeals are Merely Evidence that this is a Two-Party Dispute</u>

The primary issue at this time is whether or not these Debtors could have filed these Chapter 11 cases in the first place. As Movants have demonstrated, the Debtors did not have authority to file. That should end the inquiry. But even if they had authority – which they did not – bankruptcy should not be authorized to be used by Steve to attempt to whitewash and relitigate the rulings in DC Superior Court that Steve Tsintolas didn't like, such as the findings on mismanagement, wasted assets, denial of his and his related companies alleged debts,

---

[6] D.C. Code Ann. §29-312.24(e) states that "if the court finds that the petitioning shareholder had probable grounds for relief under DC law § 29-312.20(a)(2)(B) or (D), it may award expenses to the petitioning shareholder." Expenses are defined to include attorney's fees, expert fees, deposition costs, and other costs. (D.C. Code Ann. § 29-301.02, Definitions, (11) Expenses and Model Business Corporation Act (2016 Revision), Official Text with Official Comment and Statutory Cross-References, commentary on "expenses," Definitions Section 1.40, page 1-28).

7

oppression, denial of retention of counsel without proper board approval, etc. In the Opposition, Debtors expressly indicate their intention to pursue appeals by stating: "[a]ssuming this Court does not dismiss these cases, Debtors intend to move for relief from the automatic stay to allow the appeals to proceed at least to the extent the matters on appeal may impact Debtor's estates, including for example, the Superior Court's order awarding Movants their attorneys' fees." *See* Opposition, at pg. 7. That language should clearly demonstrate to this Court that the Debtors want to have their cake and eat it too.

As Movants set forth in their Motion to Dismiss, the Superior Court case needs to be concluded, which is the reason these matters in their totality should be returned to State Court proceedings and this Court should abstain. The Debtors here essentially acknowledge that there are important unanswered questions that merit State Court involvement, but they only want to proceed in that fashion for the issues that could benefit Steve and his related companies. That is simply pure gamesmanship by the Debtors and Steve that this Court should not allow in this prolonged two-party dispute.

   C. <u>The Debtors' Did Not Adopt and File Timely Articles of Dissolution</u>

The Debtors could not act without Movants' 50 shares of each entity for quorum and vote. DC §29-312.03 requires that dissolution be voted upon by all shareholders. As the Superior Court has already determined in this case, Movants were unambiguously shareholders after the filing of the Notice of Dissolution on October 16, 2023 and no vote was ever held. In addition, prior to any vote being put to the shareholders, DC §29-312(a) required that the Board of Directors make a proposal for dissolution for submission to the shareholders. Movants were still members of the Board of Directors and did not participate in any proposal for the filing of a dissolution for submission to shareholders. Further, DC §29-312(d) would have required

8

shareholder notice; DC §29-312(e) would have required a quorum for the vote; and subsequently a vote. None of this was properly performed by the Debtors.

    D.    <u>There Are No Significant Debts that Would Warrant Bankruptcy</u>

It is undisputed that the properties are worth more then any of the even alleged debts. The Superior Court already issued a 60-page order detailing the valuation of the Debtors. *See* Motion to Dismiss, Ex. 4, Appendix A, B, and C (setting forth the Superior's Courts valuation analysis). Moreover, the Debtors own Schedules filed in these cases reflect the majority of the alleged debts are the same debts Judge Williams already ruled on in her order. For example, in the Schedules filed with this Court, the Debtors have identified a total of $5,530,522.91 of alleged debts.[7] The overwhelming majority of the debts totaling Five Million Three Hundred Eighty Thousand Four Hundred Sixty-Six Dollars and Eighty-Six Cents ($5,380,466.86) relate to the disputes at issue in the Superior Court litigation between the shareholders and were addressed in the valuation order, including many of which debts being determined as invalid by Judge Williams. There are only approximately Forty-Seven Thousand One Hundred Six Dollars and Five Cents ($47,106.05) that relate to general business expenses that likely should have been paid in the ordinary course of operations. And, indeed, could be paid for less than the retainer the Debtors paid to bankruptcy counsel to commence the bankruptcy cases. The only significant third-party debt is the One Hundred Two Thousand Nine Hundred Fifty Dollars ($102,950.00) that is allegedly owed to Shulman Rogers. As Movants have repeatedly stated, the Shulman Rogers retention was always improper and the Superior Cour agreed. As such, this is not a

---

[7] The Debtors list certain alleged debts – indeed the majority of the alleged debts as they are all mostly related to Steve and his companies –on both Schedules, but the debts are only counted one time in this analysis.

proper debt of the Debtors and should be a debt of Steve Tsintolas who caused the improper hiring of Shulman Rogers.

      E.      <u>There is Not a Need for Chapter 11</u>

Due to Steve Tsintolas' misconduct while in control of Debtors, Movants filed both a Motion for Judicial Determination and a Motion for Appointment of a Receiver in DC Superior Court. Judge Williams has spent four years presiding over the case and has issued numerous rulings, many of which relate to the same issues now before this Court. Based upon her vast and detailed experience with this case, Judge Williams is the proper party to determine the appropriate next steps.

For example, Judge Williams could elect to appoint a receiver, which request is pending before her. A DC Superior Court appointed receiver would be more than sufficient to determine the best interests of all shareholders. A DC Superior Court appointed receiver could appoint all needed counsel and experts. A DC Superior Court appointed receiver could determine the validity of debts as prescribed by Judge Williams. A DC Superior Court appointed receiver could determine what appeals should or should not be pursued. A DC Superior Court appointed receiver could put in place independent management or take whatever action is needed for the best interest of all creditors and shareholders. All of the above would be done under Judge Williams' review and insight given she has already ruled on many of these issues.

Movants have at all times behaved in good faith and simply want their interests to be protected. Steve Tsintolas is simply unwilling and incapable of protecting all shareholder's interests.[8] Simply put, having litigated for four years, Steve is basically unhappy with Judge

---

[8] For purposes of illustrating Steve Tsintolas' further improper conduct, the Debtors referenced Movants position on COVID relief as an attempt at settlement leverage in an effort to cast the Movants as bad faith actors. That simply was inaccurate. Movants acted reasonably at that time and wanted to avoid illegal conduct as COVID relief was

10

Williams' orders and wants another bite at the apple, Steve should not be allowed to use bankruptcy as a method to circumvent the independent and fully articulated Orders of Judge Williams.

    F.    <u>The Debtors are Merely Forum Shopping</u>

The Debtors, under the control of Steve Tsintolas, are attempting to avoid the Orders of Judge Williams; have attempted to delay the dissolution as long as possible so that Steve Tsintolas makes more in management fees and his companies profit at the hands of the Debtors; are inappropriately seeking to relitigate alleged debts owed to him and his Companies that have already been determined as invalid by Judge Williams; and seeking to oppress his brother and sister while seeing them use their own funds to obtain their share of the inheritance while Steve Tsintolas uses the funds of the Debtors to keep them from ever receiving any of their inheritance.

Simply put, Steve Tsintolas has been using the Debtors for his own gain for years, and the Superior Court has been the battlefield for that litigation for the past four-years, ruling multiple times on the same issues the Debtors seek to use these bankruptcy cases to address. On that basis alone, the Court can and should dismiss these Chapter 11 cases or abstain. Dismissal or abstention is also appropriate, among other reasons, because these Chapter 11 proceedings are ultimately unnecessary. Litigation concerning the Debtors, the principal parties in these Chapter 11 proceedings and the Debtors' only assets (the Properties) has been proceeding in Superior Court for more than four years; the Superior Court is acutely familiar with all of the issues presented (and has already ruled on a number of them). Courts have recognized abstention is

---

unnecessary since the Debtors only have two employees and thus the value of COVID relief was minimal and the District of Columbia had been providing tenant rent assistance thus there were not increased tenant defaults based upon COVID. Further, Movants have always sought to settle the case at this time and later with the request for the Debtors to use private mediators only to be repeatedly turned down by Debtors.

appropriate in these circumstances where the case is already "under the watchful eye of [the state court]." *See In re O'Neil Vill. Pers. Care Corp.*, 88 B.R. 76, 79 (Bankr. W.D. Pa. 1988) ("[I]t is clear to this Court that this filing occurred merely to avoid the justice being meted out in the state courts, we will abstain from hearing these matters."); *In re RHA Stroud, Inc.*, No. 20-13482-SAH, 2020 WL 7787034, at *19 (Bankr. W.D. Ok. 2020) (internal citations omitted) (abstaining to allow the state court to proceed and noting "Debtors are not entitled to have the Bankruptcy Court hear their complaints merely because they are disgruntled with the process in the State Court"); *In re Korean Radio Broad., Inc.*, No. 19-46322-ESS, 2020 WL 2047990, at *8, *14 (Bankr. E.D.N.Y. Mar. 31, 2020) (abstaining and dismissing where bankruptcy case was "most recent battlefield in a long-running, two-party dispute" already litigated in state courts); *see also Sunshine Grp., LLC v. City of Dana Point (In re Sunshine Grp., LLC)*, 2020 WL 1846940 (9th Cir. BAP Apr. 10, 2020).

This case is nothing more than a two-party family dispute that can be litigated in state court,[9] and regrettably, a family divorce where Steve Tsintolas has already been adjudged by Judge Williams in DC Superior Court to have oppressed his siblings, wasted assets, delayed a just and speedy resolution, and mismanaged the Debtors. Simply put, the unauthorized and improper filing of Chapter 11 is merely another chapter in the Steve Tsintolas' playbook to attempt to evade the Superior Court orders having lost multiple requests for reconsideration.

---

[9] *See In re Weakley Bayou Inc.,* No. 22-30583, 2022 WL 17824218 (Bankr. N.D. Fla. Dec. 20, 2022) (dismissing the bankruptcy of a Florida real estate company on both bad faith and abstention on the basis that the dispute should be litigated in state court).

**Reservation of Rights**

Movants' reserve all of their rights, interests, arguments, and objections, including the right to supplement and amend this Reply at any time, and to raise any other arguments or otherwise respond to arguments regarding the issues addressed in connection with the Motion to Dismiss.  Movants' further reserve all rights, objections, and arguments with respect to the pending Superior Court case and the Superior Court orders, including without limitation, under the *Rooker-Feldman* doctrine and any assertion that this Court can reject or modify the Superior Court Orders.

**WHEREFORE**, for the reasons set forth herein, Movants' requests that this Court dismiss the Chapter 11 cases, or in the alternative, abstain.

Dated:  June 17, 2024                              Respectfully submitted,

*/s/* Rosa J. Evergreen_____
Rosa J. Evergreen, DC Bar No. 500227
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000
rosa.evergreen@arnoldporter.com
          --and --

/s/   Matthew J. Pavlides_____
Matthew J. Pavlides, DC Bar No. 424573
Eduardo S. Garcia, DC Bar No. 1028040
Stein Sperling Bennett De Jong Driscoll PC.
1101 Wotton Parkway, Suite 700
Rockville, MD 20852
(301) 340-2020
MPavlides@steinsperling.com

*Counsel for Christofilos Tsintolas, Deborah Tsintolas, and Fotini Tsintolas Economides Revocable Trust*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served via the Court's Electronic Filing System on June 17, 2024 on all parties requesting ECF notice in this proceeding.

   /s/ Rosa J. Evergreen
Rosa J. Evergreen, DC Bar No. 500227